# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL T. VELASQUEZ, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-954** |
| **CRESCENT TOWING & SALVAGE CO., INC.** | **SECTION "S"** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Crescent Towing & Salvage Co., Inc.'s Motion for Summary Judgment (Doc. #20) is **GRANTED** as to Michael T. Velasquez, Jr.'s unseaworthiness claim.

**IT IS FURTHER ORDERED** that Crescent Towing & Salvage Co., Inc.'s Motion for Summary Judgment (Doc. #20) is **DENIED** as to Michael T. Velasquez, Jr.'s negligence claim made under 33 U.S.C. § 905(b).

## BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendant, Crescent Towing & Salvage Co., Inc., which owns the vessel the ANGUS R. COOPER. Crescent Towing argues that it is entitled to summary judgment on plaintiff's claim brought under § 905(b) of the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 905(b), because plaintiff, Michael T. Velasquez, Jr., cannot prove that Crescent Towing breached one of the duties owed by Crescent Towing to Velasquez under Scindia Steam Navigation Co. v. DeLosSantos, 101 S.Ct. 1614 (1981).

On February 4, 2016, Velasquez, an employee of Jonny White's C&W Air Repair, Inc. ("C&W"), was performing maintenance work on the ANGUS R. COOPER, a towing vessel owned by Crescent Towing. The crew of the ANGUS R. COOPER consisted of a master, Daniel Caire;

a wheelman; and, an engineer, Mark Millican.  C&W's workers aboard the ANGUS R. COOPER on February 4, 2016, were the lead mechanic, Daniel DeSoto; and, two helpers, Velasquez and Eugene Owens.  C&W's workers were on the ANGUS R. COOPER for approximately four hours rebuilding the compressors in the lower engine room.  The lower engine room is accessed from the upper engine room via a set of steep, ladder-like stairs.

Owens and Velasquez disassembled one of the vessel's compressors.  The parts from that compressor were brought to the upper engine room to be cleaned.  After the residue and gasket material was scraped off of the parts, Owens and Velasquez carried them back to the lower engine room to be reinstalled by DeSoto.

Velasquez alleges that he sustained serious and disabling injuries when he slipped and fell while he was traversing the stairs leading from the upper engine room to the lower engine room.  Velasquez further alleges that the fall was caused by a slippery substance, likely oil, left on the stairs by Crescent Towing's employees, and an inadequate non-skid surface.  Velasquez filed this suit against Crescent Towing alleging that its negligence and the unseaworthiness of the ANGUS R. COOPER caused the accident.

Crescent Towing filed the instant motion for summary judgment arguing that Velasquez cannot prevail on his negligence claim under § 905(b) of the LHWCA because he cannot prove that Crescent Towing breached one of the duties enumerated in <u>Scindia</u>.  Specifically, Crescent Towing argues that there is no evidence that Crescent Towing turned the vessel over to C&W's employees without warning of any latent defects, retained active control of the area in which the C&W's employees were working, or failed to intervene to protect C&W's employees from a

hazard of which it was aware. Crescent Towing also argues that a person covered by the LHWCA is precluded from making an unseaworthiness claim against the vessel.

Velasquez argues that Crescent Towing breached the active control duty outlined in Scindia. Velasquez contends that there are genuine issues of material fact regarding whether Crescent Towing maintained active control of the area in which C&W's employees were working and that it failed to act reasonably in either cleaning up the spilled slippery substance or warning C&W's employees about it.

## ANALYSIS

**I.      Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue

for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### A. The Scindia Duties

Crescent Towing argues that it is entitled to summary judgment on Velasquez's claims because it did not breach any of the Scindia duties.

Section 905(b) of the LHWCA permits a covered maritime worker to recover personal injury damages from the owner of a vessel, caused by a vessel's negligence. In Scindia Steam Navigation Co. v. DeLosSantos, 101 S.Ct. 1614 (1981), the Supreme Court of the United States defined the vessel's duty to longshoremen. The United States Court of Appeals for the Fifth Circuit has extended the rationale of Scindia to any independent contractor working aboard the vessel. See Casaceli v. Martech Int'l, Inc., 774 F.2d 1322, 1326-27 (5th Cir. 1985). Scindia provides as follows:

> The vessel owner must provide work space, ship's gear, equipment, and tools in a condition that allows an [independent contractor], acting with reasonable care, to carry on his operations with reasonable safety. The owner must warn the [independent contractor] of any hidden dangers which the owner knows or should know about in the exercise of reasonable care. The owner need not supervise, inspect, or monitor the . . . operations for dangerous conditions that develop during that process unless required to do so by contract, positive law, or custom. He may generally rely on the [independent contractor's] exercise of reasonable care. An

4

> exception to this lack of supervisory duty exists if the shipowner becomes aware of a dangerous condition in the ship's gear during the . . . operation, and is also aware that the [contractor] is unreasonably failing to protect [the employee] against this danger. The shipowner then has a duty to intervene and repair the gear constituting the danger.

Id. at 1326 (citing Scindia, 101 S.Ct. at 1621-26). These duties are known as the "turnover duty," the "active control of the vessel," and the "duty to intervene." Howlett v. Birksdale Shipping Co., S.A., 114 S.Ct. 2057, 2065 (1994). Velasquez argues that Crescent Towing breached the duty of active control of the vessel. Because Velasquez does not make any augments concerning the turnover duty or the duty to intervene those Scindia duties will not be analyzed.

As to the duty of active control of the vessel, it is "accepted that the vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoreman to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." Scindia, 101 S.Ct. at 1622; see also Manuel v. Cameron Offshore Boats, Inc., 103 F.3d 31, 34-35 (5th Cir. 1997); Pimental v. LTD Canadian Pacific Bul, 965 F.2d 13, 16-17 (5th Cir. 1992). Liability under the active control duty "is not relieved when the hazard is open and obvious." Pimental, 965 F.2d at 16.

In determining whether a vessel owner retains active control over an area on the vessel, the court "considers whether the area in question is within the contractor's work area, whether the work area has been turned over to the contractor, and whether the vessel owner controls the methods and operative details of the stevedore's work." Dow v. Oldendorff Carriers GMBH & Co., 387 Fed. Appx. 504, 507 (5th Cir. 2010) (citations omitted). Liability under the active control duty is not triggered by a vessel owner "having its employees check on the progress of the

5

contractor's work." Dow, 387 Fed. Appx. at 507 (citing Fontenot v. United States, 89 F.3d 205, 208 (5th Cir. 1996)).

Crescent Towing argues that the deposition testimony of Velasquez, DeSoto, Owens and Millican demonstrates that it did not breach the active control duty. Velasquez testified that he worked for at least two hours and went up and down the engine room stairs at least ten times before his accident. Velasquez did not see any oil on the stairs and he did not report any oil on the stairs to the vessels' crew or his boss, DeSoto, before his fall. At the time of the fall, Velasquez was traversing the stairs facing forward, carrying six steel plates in one hand and using the other hand to hold the handrail. Velasquez testified that he saw oil on the stairs after his fall, but he did not know where it came from.

DeSoto testified that he was the first C&W employee to traverse the engine room stairs when he and his helpers began their work aboard the ANGUS R. COOPER. DeSoto did not see any foreign substance on the stairs, and did not see any oil or anyone cleaning up oil at any time. DeSoto further testified that if there had been oil or grease on the stairs, he would have seen it. After he fell, Velasquez did not tell DeSoto that he fell in oil.

Owens testified that he traversed the stairs ten to fifteen times on the day of the accident and did not see any oil or foreign substance on the engine room stairs. This includes the time after the accident allegedly occurred.

Millican testified that there was no oil on the stairs when he turned the area over to C&W. Millican also testified that he did not see any oil or foreign substance on the stairs during the repair work when he was briefly in the engine room. Nobody reported to Millican or any other member of the vessel's crew that there was oil on the stairs before the accident. Millican further testified that the only way oil would have reached the stairs during the time in question was by C&W's

employees tracking it while carrying compressor parts up and down the stairs when they had control of the lower engine room. Millican did not direct C&W's work at all.

Crescent Towing argues that this testimony establishes that there was no oil on the stairs when the vessel's crew turned the work area over to C&W and that Crescent Towing did not actively participate in C&W's work. Rather, DeSoto was in charge of C&W's work, and the area in which it was performed. No vessel operation dripped oil onto the stairs, and that if there was oil on the stairs, it must have occurred due to C&W's employees' traversing the stairs with compressor parts.

Velasquez argues that there are disputed issues of material fact that preclude summary judgment as to the active control duty. Velasquez contends that the vessel remained in the active control of its crew, and that there are genuine issues of material fact as to the degree of that control. Caire testified that the vessel was in operation on the day of the accident and that once-in-a-while he would walk into the upper engine room and look down into the lower engine room to observe C&W's work. Millican testified that he was working in the engine room, to oversee C&W's employees in terms of making sure that they had everything they needed and performing "the safety lockout/tagout of the units to be opened and directed them as to where everything was and if they needed anything, holler, let us know." Velasquez testified that Millican was working in a different area in the engine room the entire time that C&W's employees worked and that he would check on the C&W crew.

The testimony cited by Velasquez demonstrates that there are disputed issues of material fact regarding whether the vessel's crew remained in active control of C&W's worksite. Millican testified that he was in the engine room to oversee the C&W crew and that he was there to provide assistance as needed. It is unclear whether Millican actively involved himself in the work being

performed by C&W's crew. Further, it is disputed whether Velasquez slipped in oil. Although nobody else testified that they saw oil on the stairs before the accident, Velasquez testified that he observed the oil on the stairs after his fall and it looked as if someone had stepped in it. Velasquez also testified that the non-skid material was in disrepair. As pointed out by Velasquez, there are disputed issues of material fact that preclude summary judgment as to whether Crescent Towing breached the active control duty. Therefore, Crescent Towing's motion for summary judgment is DENIED is denied as to Velasquez's claim brought under § 905(b).

B. **Unseaworthiness**

Crescent Towing moves for summary judgment on Velasquez's unseaworthiness claim. Velasquez does not oppose Crescent Towing's motion for summary judgment on his unseaworthiness claim. The United States Court of Appeals for the Fifth Circuit has held that a maritime worker covered by the LHWCA, "unlike a Jones Act seaman, does not have a cause of action for unseaworthiness." Becker v. Tidewater, Inc., 335 F.3d 376, 387 (5th Cir. 2003). Therefore, Crescent Towing's motion for summary judgment is GRANTED as to Velasquez's unseaworthiness claim, and that claim is DISMISSED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Crescent Towing & Salvage Co., Inc.'s Motion for Summary Judgment (Doc. #20) is **GRANTED** as to Michael T. Velasquez, Jr.'s unseaworthiness claim.

**IT IS FURTHER ORDERED** that Crescent Towing & Salvage Co., Inc.'s Motion for Summary Judgment (Doc. #20) is **DENIED** as to Michael T. Velasquez, Jr.'s negligence claim made under 33 U.S.C. § 905(b).

New Orleans, Louisiana, this **3rd** day of November, 2017.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**